IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT EARL ALEXANDER,

                Plaintiff,

   v.

WISCONSIN DEPARTMENT OF CORRECTIONS,

                Defendant.

OPINION and ORDER

26-cv-59-jdp

---

Plaintiff Robert Alexander, proceeding without counsel, contends that the Wisconsin Department of Corrections has violated the Rehabilitation Act by refusing to communicate with him in writing to accommodate his inability to hear and speak. Alexander has moved for a preliminary injunction ordering prison officials to communicate with him in writing during the pendency of this lawsuit. Dkt. 7 and Dkt. 12. The DOC filed a response and supporting evidence. Dkts. 41–44. I will deny the motion for a preliminary injunction because the DOC's submissions show that Alexander has not received necessary medical testing to confirm his hearing loss.

BACKGROUND

Alexander did not follow the court's formal requirements for a motion for a preliminary relief, which require the moving party to submit proposed findings of fact supported by admissible evidence. But Alexander swore to the factual allegations in his motion under penalty of perjury and he submitted supporting documents, so I will overlook the formal shortcomings of Alexander's motion. Moreover, Alexander and the DOC submitted essentially the same

evidence with their submissions and the relevant facts appear to be undisputed. Those facts are as follows:

The DOC has an established policy for inmates with disabilities to request reasonable accommodations. Division of Adult Institutions (DAI) Policy 300.00.35. Under that policy, an inmate can request an accommodation by completing a form and sending it to the prison's ADA coordinator. The ADA coordinator consults with health services staff to determine whether the inmate has a qualified disability, whether additional medical testing is needed to verify the disability, and whether the requested accommodation is reasonable. Accommodation requests, whether approved or not, are documented in the prison's digital system.

Alexander does not have an approved accommodation request documented in the prison's system. Nevertheless, Alexander professes that he cannot hear or speak and prison staff have accommodated that professed disability for several years by communicating with him in writing using a dry erase board. But on November 6, 2024, the prison warden sent Alexander a memo telling him that if he wanted to continue receiving accommodations, he needed to submit an accommodation request pursuant to DOC policy within 90 days. Dkt. 44-2. Alexander did not submit an accommodation request, so on January 22, 2025, prison staff removed his dry erase board and began communicating with him verbally.

In February 2025, Alexander was transferred from Dodge Correctional Institution to Oshkosh Correctional Institution. Staff at that institution began communicating with Alexander via dry erase board again. In August 2025, Alexander was transferred back to Dodge Correctional Institution. After confirming that Alexander still did not have an approved accommodation request, prison staff resumed communicating with Alexander verbally. In a written memo, the prison's ADA coordinator told Alexander that he could request testing to

confirm hearing or speech disabilities at any time, and that he could request an accommodation once his disabilities were medically documented. Dkt. 44-5.

Shortly after Alexander returned to Dodge Correctional Institution, a prison physician referred him to an outside provider for hearing testing, which Alexander received on October 28, 2025. Dkt. 43-1, at 12–14. The results were inconclusive. The audiology test, which required Alexander to cooperate by indicating if he could hear, was suggestive of profound deafness. But the otoacoustic emissions (OAEs) test, which did not require Alexander to cooperate, showed hearing response at middle frequency levels. *Id.*; *see also* Dkt. 42 (declaration of physician Mark Ledesma). Because of the inconsistency between the different tests, the outside provider recommended that Alexander receive a head MRI and auditory brainstem response (ABR) testing. Dkt. 43-1, at 9. DOC ordered those tests for Alexander, but Alexander refused to undergo the testing. Dkt. 43-1, at 8, 18, 20, 22–25.

## ANALYSIS

A motion for emergency injunctive relief seeks "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also Bevis v. City of Naperville, Ill.*, 85 F.4th 1175, 1188 (7th Cir. 2023) (stating that party seeking preliminary injunction bears burden to show that such relief is warranted). To meet his burden, Alexander must establish four elements: (1) he is likely to succeed on the merits on his claim; (2) he is likely to suffer irreparable harm if I do not grant him the emergency injunctive relief that he seeks; (3) the balance of equities tips in his favor; and (4) emergency injunctive relief is in the

public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The first element is dispositive here.

To establish likelihood of success on the merits, a plaintiff does not need to prove his case by a preponderance of the evidence, as he will have to do at trial. *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). But he must make a "strong showing" of how he proposes to prove the key elements of his case. *Id.* In this case, Alexander is bringing a failure-to-accommodate claim under the Rehabilitation Act, so he must make a strong showing of how he proposes to prove the following elements: (1) he is a qualified individual with a disability; (2) the DOC was aware of his disability; and (3) the DOC failed to reasonably accommodate his disability. *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013).

I conclude that Alexander hasn't put in evidence at this point sufficient to show a strong likelihood that he cannot hear, which he needs to do to establish the first element of his Rehabilitation Act claim.[1] Alexander says that he cannot hear, but prison staff dispute that, asserting that he responds in a coherent manner when they speak to him and that they have observed him watching television without closed captioning, listening to the radio, and speaking with other inmates. *See* Dkt. 42 (declaration of Mark Ledesma) and Dkt. 43 (declaration of Amy Radcliffe). Alexander also says that his hearing test on October 28, 2025, showed profound hearing loss. But that's incorrect: his audiology test (which required his cooperation) was "suggestive of profound hearing loss," Dkt. 43-1, at 14, but the overall results

---

[1] In previous motions, Alexander has pointed out that I held an evidentiary hearing on whether he was misrepresenting his hearing loss in 2021 and concluded that the DOC "ha[d] not persuaded me that Alexander is malingering." *Alexander v. Tapio*, case no. 17-861-jdp, Dkt. 253. But I made that finding in the context of a sanctions motion for which defendants bore the burden of proof. Here, Alexander has the burden to provide evidence to support his professed hearing loss. My ruling in the *Tapio* case is not relevant here.

were inconclusive, and Alexander has refused further testing that might clarify the extent of his hearing loss.

There is also another problem. The Seventh Circuit has held that it does not violate the Rehabilitation Act for an institution to require disabled individuals to provide medical documentation to support a request for a reasonable accommodation. *Ekstrand v. School District of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009). Alexander refused further hearing tests recommended by his medical providers, Dkt. 43-1, so even assuming that he does have profound hearing loss, he has not provided DOC with medical documentation supporting his need for a reasonable accommodation.

In his complaint and his motion for a preliminary injunction, Alexander says that prison staff are ignoring his medical provider's recommendation by not providing him with a dry erase board to communicate. I take him to be referring to a note from the physician assistant who reviewed Alexander's hearing test results in October 2025, who wrote that Alexander is "currently communicating well with captions and writing. This should be optimized as much as possible @ facility f/u pending." Dkt. 43-1, at 9. But the physician assistant did not support this recommendation with any conclusive medical finding about the extent of Alexander's hearing loss; instead, it appears that she was making a practical suggestion based on her own experience communicating with Alexander. Nothing in the Rehabilitation Act requires the DOC to act on a recommended accommodation that was not supported by a finding that Alexander was disabled.

Alexander has not made the necessary showing that he is likely to succeed on the merits of his claim, so I will deny his motion for a preliminary injunction. If Alexander agrees to receive

the hearing tests that his provider recommended and that testing supports his assertions about

his hearing loss, then Alexander may renew his request for preliminary relief.

ORDER

IT IS ORDERED that Alexander's motions for a preliminary injunction ordering prison

staff to communicate with him in writing, Dkt. 7 and Dkt. 12, are DENIED.

Entered August 10, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge